LAW *v.* WYNN.

4-3925

Opinion delivered May 20, 1935.

*Culbert L. Pearce,* for appellant.

*Miller & Yingling* and *Tom W. Campbell,* for appellees.

JOHNSON, C. J.   E. R. Wynne, as administrator of the estate of Dave Law, deceased, filed his bill of interpleader in the chancery court of White County alleging, in effect, that on November 2, 1930, his intestate was instantly killed by being struck by a moving train of the Missouri Pacific Railroad Company at the city of Bald Knob in this State; that deceased left surviving him Myrtle Law, as his widow; Francine Law, a minor daughter; Mary Chumley, a daughter, and Clyde Law, a son, as his sole heirs at law; that subsequent to the death of the said Dave Law, petitioner was duly appointed administrator of the estate of Dave Law, deceased, and soon thereafter as such instituted proceedings in the State courts of Missouri against said railroad company to compensate the injury and death of said intestate; that said proceeding finally terminated in favor of petitioner in his representative capacity and that he received of the said railroad company $2,425 as compensation for the injury and death of said Dave Law; that he has paid the widow of deceased one-third of the net sum recovered, and has paid to Francine Law, the minor daughter, one-third of the sum remaining after distribution to the widow and has paid Mary Chumley, the other daughter, a sum equal to that paid the minor daughter. That a controversy has arisen between Clyde Law, the son of deceased, and the two daughters as to the remaining one-third of said recovery and that said controverting parties should be interpleaded to assert their respective interests in and to said fund.   The two daughters answered by alleging that they were jointly entitled to the remaining fund in the hands of the administrator, and the son answered claiming the remaining one-third of the recovery as an heir at law of Dave Law, deceased. The case was determined upon an agreed statement of facts, the pertinent provisions of which are:

"That Dave Law at the time of his death and during several years prior thereto was a farmer living near Bald Knob, in White County, Arkansas, and was not in the employ of the Missouri Pacific Railroad Company; that on the morning of November 2, 1930, the said Dave Law was instantly killed by a Missouri Pacific passenger train at a public street crossing on the tracks of said railroad in Bald Knob, Arkansas, while the said Dave Law was attempting to cross said railroad tracks upon said street crossing in an automobile; that the said Dave Law left surviving him the said Myrtle Law, as his widow, and the said Clyde Law, Mary Chumley and Francine Law, as his only children and heirs at law; that the said Clyde Law was a child of the said Dave Law by a former wife and the said Mary Chumley and Francine Law were children of the said Dave Law by the said Myrtle Law; that at the time the said Dave Law was thus instantly killed, the said Clyde Law was an adult, twenty-four years of age, and was married and not living with the said Dave Law; that at the time the said Dave Law was thus instantly killed the said Mary Chumley, whose name was then Mary Law, was a minor, fifteen years of age, and the said Francine Law was then a minor, ten years of age, and both the said Mary Chumley and Francine Law were then living with and being wholly supported by the said Dave Law and they were then both entirely dependent upon the said Dave Law for their support; that at the time the said Dave Law was thus killed the said Myrtle Law was his wife, and then and there resided with him and was supported by him and wholly dependent upon him for her support; that on November 10, 1930, the said E. R. Wynn was in and by the probate court of White County, Arkansas, duly appointed administrator of the estate of the said Dave Law, deceased, and on the said 10th day of November, 1930, the said Myrtle Law was in and by the said probate court duly appointed guardian of the said Mary Law (now Chumley) and Francine Law, minors; that the said E. R. Wynn, by virtue of his said appointment, is now the duly constituted and acting administrator of the estate of Dave Law, deceased, and the said

Myrtle Law, by virtue of her said appointment, is now the duly constituted and acting guardian of the said Francine Law, the said Mary Law (now Chumley) having attained her lawful age and has married; that in 1932 the said E. R. Wynn, as administrator of the estate of Dave Law, deceased, filed suit in the circuit court of Butler County, Missouri, against the Missouri Pacific Railroad Company for damages for the said instant death of the said Dave Law, a copy of his petition in said suit being hereto attached, marked Exhibit A, and made a part of this agreed statement of facts; that in January, 1933, the said railroad company filed in said court its petition for change of venue of said case, and said suit was thereupon transferred to Wayne County, Missouri, and tried in the circuit court of Wayne County, Missouri, in February, 1933, and a judgment was then and there recovered by said plaintiff against said railroad company for damages for the said instant and wrongful death of the said Dave Law, deceased, in the sum of $7,000 in accordance with the prayer of the petition, copy of which is hereto attached as Exhibit A; that said railroad company immediately appealed from said judgment to the Springfield Court of Appeals and executed an appeal bond on which the National Surety Company became surety; that thereafter, on March 31, 1933, said railroad company instituted in the Federal Court at St. Louis, Missouri, reorganization proceedings in the nature of bankruptcy, and on April 30, 1933, the said National Surety Company was declared insolvent, and its assets taken in charge by the insurance commissioner of the State of New York; that in 1934 the said judgment was affirmed by the said Springfield Court of Appeals; that, both the said railroad company and the said National Surety Company being then in bankruptcy, a compromise settlement of said judgment was effected by the payment to the said administrator of the sum of $5,000 in full compromise settlement of said judgment; that the said administrator, prior to the bringing of said suit, engaged certain attorneys and agreed to pay them a contingent fee of 50 per cent. of whatever amount might be recovered in said suit; that from the

said $5,000 so collected by said administrator for the death of the said Dave Law, deceased, the said administrator paid $2,500 thereof to his said attorneys for their legal services in collecting same; from the remaining $2,500 the said administrator deducted for his own services a commission of 3 per cent. of the said $2,500 leaving a residue of $2,425; that said administrator has paid one-third of the said $2,425 to-wit, $808.33 to the said Myrtle Law, as the widow of the said Dave Law, deceased, and said administrator has paid one-third of the remaining two-thirds, to-wit, the sum of $538.89, to each of the said daughters of the said Dave Law, deceased, to-wit, $538.89 to the said Myrtle Law, as guardian of the said Francine Law and $538.89 to the said Mary Chumley; and the said administrator has paid the remaining $538.89 to the clerk of this court to be by said clerk disbursed in accordance with the order, judgment and decree of this court, it being contended by the said Clyde Law that the said $538.89 so deposited by said administrator with the clerk of this court should be paid over to the said Clyde Law and it being contended by the said daughters of the said Dave Law, deceased, that said sum so deposited should be equally divided between them.''

The chancellor determined that the fund in controversy should be paid to the two daughters of deceased in equal parts to the exclusion of the son, the appellant here, and this appeal comes from the decree so entered.

It is conceded that the recovery against the railroad company arose under § 1074, Crawford & Moses' Digest, and that the proceeds thereof should be distributed under § 1075, Crawford & Moses' Digest. This section provides:

''Every such action shall be brought by, and in the name of the personal representatives of such deceased person, and if there be no personal representatives, then the same may be brought by the heirs at law of such deceased person; and the amount recovered in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate, and, in

every such action, the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person. Provided, every such action shall be commenced within two years after the death of such person.''

The chancellor held, in effect, that the words ''next of kin,'' as used in the section of the statute quoted, means children under lawful age living with the father and dependent upon him for support at the time of his death. On the other hand, appellant contends that the words ''next of kin,'' when construed with all other language of § 1075, means heirs at law, and that the son is therefore entitled to inherit in equal parts with the two daughters. We think that, when ''next of kin'' as used in § 1075, Crawford & Moses' Digest, is read and construed with all other language appearing therein, appellant's contention is correct and must be sustained. It is noteworthy that the cause of action under this section first vests in the administrator of the deceased's estate, but, if there be no administration, then the heirs at law of such deceased person may bring the suit. It is not reasonable to suppose that the Legislature would create or vest a right to bring a suit at law in a class of persons who had no interest in the subject-matter thereof or in the proceeds of recovery. It evinces a legislative intent to vest the cause of action in the heirs at law of the deceased person in whom the rights of inheritance of personal property would vest under general law, had the deceased died intestate. Moreover, the language which follows, ''shall be distributed to such widow and next of kin in proportion provided by law in relation to distribution of personal property left by persons dying intestate,'' evinces a clear and unmistakable intent to distribute the net recovery in all such actions to the heirs at law of such deceased persons as is provided by general law of descent and distribution and not to a restricted class of persons, as contended by appellee. It is true the section of the statute then provides: ''and in every such action, the jury may give such damages as they shall deem a fair and just compensation, with ref-

erence to pecuniary injuries resulting from such death to the wife and next of kin of such deceased persons,'' but this language does not conflict with the provisions which precede it. The language ''the jury may give such damages as they shall deem a fair and just compensation, with reference to pecuniary injuries resulting from such death,'' establishes the rule by which the jury is to measure the extent of the award which may be made to compensate those entitled to receive damages by reason of such death. This language does not have the effect of changing the rule theretofore stated in reference to the class of persons entitled to participate in the recovery.

We have heretofore held that the heirs at law of a deceased person in actions brought under §§ 1074 and 1075, Crawford & Moses' Digest, are necessary and indispensable parties to such suit unless instituted by the representative of the deceased (*McBride* v. *Berman*, 79 Ark. 62, 94 S. W. 913), and a like conclusion was reached in *K. C. S. Ry. Co.* v. *Herney*, 87 Ark. 443, 112 S. W. 967, and *K. C. S. Ry. Co.* v. *Frost*, 93 Ark. 183, 124 S. W. 748.

It is inconceivable that an heir at law of a deceased person could be a necessary and indispensable party to such litigation unless interested in the subject-matter thereof. The effect of our opinions in the cases cited is that ''next of kin,'' as used in § 1075, Crawford & Moses' Digest, contemplates and means heirs at law of such deceased person, and we think it follows from this that any such heir at law has the right to participate in the distribution of the proceeds of any such recovery. To construe § 1075 as contended by appellees would ignore our previous opinions on the subject, and would likewise ignore and render meaningless all that part of § 1075 in reference to the distribution of the funds to the widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate.

Appellee contends that *Murphy* v. *Provence,* 153 Ark. 240, 240 S. W. 421, is opposed to the views here expressed. This case arose under § 7138, Crawford & Moses' Digest, which is a part of the Railroad Hazard Act, and is modeled after the Federal statutes on this sub-

ject. The late Chief Justice McCulloch, who wrote the opinion for the court in *Murphy* v. *Provence, supra,* clearly pointed out the difference between § 1075 and § 7138 there under consideration by saying:

"The more explicit interpretation of the Federal statute by the Supreme Court of the United States, beginning with the Vreeland case, *supra,* came after the adoption of the statute by the lawmakers of this State, and the doctrine of borrowed interpretation cannot, perhaps, be invoked, but we have no doubt of the correctness of the subsequent interpretation of the Federal statute, and our statute is, of course, subject to the same interpretation. That statute does not contain any express provision or direction with reference to the distribution of the fund, as is the case with respect to our statute patterned after Lord Campbell's act. But it does clearly appear from the statute that the recovery is for the benefit of the person or class of persons who suffer injury on account of the death caused by the wrongful act, and, in the absence of an express provision to the contrary in the statute itself, the only reasonable interpretation is that the participation in the distribution of the fund must be limited to those who are to be compensated for the injury."

In the more recent case of *Adams* v. *Shell,* 182 Ark. 959, 33 S. W. (2d) 1107, the late Chief Justice Hart tersely stated the views of this court in reference to the true meaning and effect of § 1075, Crawford & Moses' Digest, in the following language:

"Under 1075 of the Digest, the personal representative of a deceased person may bring an action for the wrongful death of said decedent, and the amount recovered shall be for the exclusive benefit of the widow and next of kin of such deceased person and shall be distributed to such widow and next of kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate. Thus, it will be seen that it is the duty of the administrator to bring the suit as provided by the statute, and, in the event of a recovery, to distribute the amount recovered according to the provisions of the statute which covers the distribution

of personal property. The damages are recovered in the name of the personal representative of the deceased, but do not become assets of the estate."

The language quoted in the two opinions last cited is, to the effect, that § 1075 creates no restricted class of persons who may be permitted to participate in a recovery thereunder to the exclusion of others designated therein. It may be as urged by appellee that this language was not necessary to an opinion in either case, but, after the most deliberate consideration, we have reached the conclusion that the cases referred to announce the correct interpretation and meaning of § 1075, Crawford & Moses' Digest.

For the reasons stated the case is reversed and remanded, with directions to award the appellant the fund in the registry of the court.

Butler, J., dissents.